Okay. Yeah. You were in the first district of Collard Court, the first division. My name is Terrence Lavin. I'll be presiding today along with my colleagues, Michael Hyman, Justice Michael Hyman and Justice Mary Ellen Coghlan. We're here on the case of people of state of Illinois versus Ibrahim Kibayasi. Hope I got that pronunciation correct. Number 1-20-0795. We're looking basically for 15 minutes from each of you to save some time for rebuttal for the appellant. And let's start with the oral argument now. Okay. This is Carrie Darden on behalf of the appellant, Mr. Ibrahim Kibayasi. And Mr. Kibayasi has made a substantial showing that the cascading effect of trial counsel's ineffectiveness deprived him a fair trial and sentencing hearing. The cumulative effect of trial counsel's ineffectiveness ultimately rendered the resulting conviction unreliable. And this court should remand for an evidentiary hearing or for further second stage proceedings. One of the things I was looking for in your briefs is your discussion of prejudice. And in your reply brief, I think you mentioned the word prejudice four times and to none of them, is there any kind of law associated to say it's prejudicial, make a conclusion. And in your opening brief, it's mentioned what the general law is. But again, I didn't see much about any kind of case law that would be applicable to this situation. Is there any cases that you have in mind that deal with prejudice as a precedent? So, Your Honor, there's no specific case law that deals with a case similar to this sort of situation. And part of what we were trying to bring out in the briefs is the cumulative effect of the prejudice here. It's hard to separate each one of these issues and consider them in isolation when the compounding effect of the ineffectiveness is really what lend to such a prejudicial effect in this case. Of course, first you have the fact that trial counsel failed to present exculpatory evidence, specifically failed to present DCFS reports and documentation from the child's pediatrician who could have testified that someone other than Mr. Kibayasi, specifically Dylan's mother, Martha Lupembe, could have caused the injuries that ultimately led to his death. The pediatrician saw Dylan... Aren't those matters of strategy when you call it? Sorry, go ahead. No, go ahead. I just wanted to say that, you know, of course, counsel is owed some deference in cases like this. And of course, matters of strategy are within the sound discretion of trial counsel. However, in this case, we have some evidence in the record that suggests that trial counsel made a series of inaccurate and premature assumptions when making certain strategic decisions. So, in his response to the ARDC investigation, for example, he stated that the reason why he didn't call any forensic experts to testify about some of this exculpatory evidence was because in reaching out to some of these experts, they concluded that Dylan's injuries could not have been caused by anything other than violent shaking. Now, the petition has two affidavits from two of those forensic experts that counsel claimed to have reached out to, and one of them states that she has no recollection or any record of any consultation from counsel whatsoever in this case. She has no recollection of reviewing any of the medical records concerning Dylan or any of his injuries. And then the other expert that he named in the response to the ARDC investigation explicitly stated that her conclusion was not that Dylan had to have violent shaking, but she said that in her medical opinion, he died from an injury that was at least two or three weeks prior to his admission to the hospital on September 3rd of 2009. So, we have evidence in this case that calls into question trial counsel's decision making, in addition to the confusion surrounding the forensic experts and the content of the report. It didn't go your way. That doesn't mean that counsel was ineffective. So, he made a judgment and, you know, that was a decision that counsel made. So, why does that show ineffectiveness? So, our position... Again, you have to show prejudice. So, Your Honor, our position is not that the decision making just didn't go Mr. Kibayasi's way and that the outcome was unfavorable. Our decision is that the decision making was unsound. So, you have evidence that he's saying he made a decision not to call certain experts because of the conclusions that they articulated to him. And you have those same experts saying those are not the conclusions that we articulated to counsel. One of them even says, I don't have any recollection of consulting with him at all. So, that calls into question the investigation. It calls into question the decision making, in addition to the evidence surrounding... Why does that necessarily follow? Because aren't we talking about several years later? I mean, the doctor or an expert like that would not remember a conversation, probably not a major conversation in their point of view years later. We're talking about seven or eight years later, at least. So, Your Honor, yes, it was several years later. However, I believe it was Dr. Shea Kuteyes who counsel said that he reached out to. And in her affidavit, she said that her office maintains meticulous records of consultations. And so, if she had reviewed the record, she said that there would have been some sort of documentation of that, of her having reviewed the records and consulted with counsel. And she checked both paper and electronic records dating back several years and had no record whatsoever. So, it was, of course, her recollection, but it was also the record keeping within her office that showed that she didn't consult with counsel on this case. In addition to the confusion surrounding the forensic experts, we also have counsel's he made a decision to withdraw the motion to suppress on the basis that the motion to quash had been denied. So, our conviction is that that's an unreasonable decision, especially where the motion to quash and the motion to suppress were two entirely separate legal issues that involved entirely separate evidence. So, counsel stated in that same ARDC response that he made a decision, to withdraw the motion to suppress once he determined that the Mr. Kibiasi's statements to police would be coming in. And he made that assumption because the motion to quash had been denied. However, let's look at the language. I mean, what you say is only half correct, because if you read the language that the attorney used, he said, Mr. Kibiasi decided, with my approval, to withdraw the motion. That motion argued what you just said. After careful review of the evidence, we decided such an argument. So, what it says is that your client was involved in that decision making, which is not something you were just talking about. So, I think the words here indicate that the client was involved intimately in that decision making and withdrew that particular motion. Do you disagree? No, I don't disagree at all. I wasn't attempting to withhold that information. No, I'm not saying you were, but I'm just saying the way you stated it, the fact is that there was the involvement of the client in that decision making. It wasn't as if the lawyer went off on his or her own. Sure, sure. We do have, it's clear from that response that a counsel stated that Mr. Kibiasi was involved in that decision. And of course, any good trial attorney would be involving their client in these types of decision makings. However, that type of decision is made with the advice of counsel. And so, if counsel is stating in the preceding sentence that he chose to withdraw the motion with Mr. Kibiasi's help making that decision, once the judge ruled that the videotaped confession would be admitted during trial, even though the judge did not rule that that statement or the videotaped confession would be admitted at trial, Mr. Kibiasi agreeing to the decision to withdraw the motion to suppress with that statement from counsel, which was ultimately not a sound legal statement, because we know obviously that a motion to quash is an entirely distinct legal motion from a motion to suppress, especially here in this case, you have the judge ruling on the motion after the hearing on the motion to quash that, you know, probable cause existed even before Mr. Kibiasi even arrived at the police station. So, the judge didn't consider any of the evidence that was presented about the circumstances surrounding Mr. Kibiasi's statement. And so, isn't this a classic strategy decision made on a full record? So, this typically would be a strategic decision within the discretion of counsel. However, where we have this response to the ARDC investigation that specifically states that counsel relied on flawed assumptions, that calls into question counsel's decision making. And I the confusion surrounding the forensic experts, we also have counsel explicitly stating that the judge ruled that the confession would come in when that's not actually what happened. We know from the record that that's not what occurred. And so, I think that calls into question counsel's decision making where in maybe another case where you don't have that evidence where counsel is explicitly stating that he made these series of flawed assumptions and decisions. You know, deference isn't warranted here where we have that evidence to the contrary is essentially what I'm trying to articulate. All right. You want to save some time for rebuttal? Yes, please. Okay. Any further questions? I just like to know, I mean, how many of these so-called errors of counsel would you say, which ones are necessary in order for us to reverse and say, you know, ineffectiveness of counsel? You said a totality of them, so we need all of them? Do we need just one or two? I mean, I don't see, what are you arguing? So, Your Honor, our argument, of course, is that each one of these errors create a cumulative effect of prejudice. However, each one of these arguments, each one of these four arguments articulated in our briefs is sufficient for a remand for further second stage proceedings or an evidentiary hearing to further flesh out some of the confusion surrounding trial counsel's decision making. So, if there are no other questions, I'll just reserve some time for rebuttal. Okay. We'll hear from Ms. Slattery, please. Good afternoon. May it please the court. This court should affirm the trial court's second stage dismissal of petitioner's petition for post-conviction relief, where his claims are procedurally barred or otherwise insufficient to make a substantial showing of any constitutional violation. Unless the court has any specific questions about the forfeiture arguments raised in the people's brief, I plan on focusing my argument on the lack of substantive merit underlying each of its claims and his inability to satisfy his burden at the second stage of post-conviction review, namely his inability to establish that he was in any way prejudiced by any of his counsel's strategic decisions. When it comes to the motion to suppress, he's unable to show that counsel's decision was unreasonable or prejudicial. The record reflects that counsel made an informed and strategic decision to withdraw the motion to suppress his statements following a hearing on petitioner's related motion to quash his arrest. What is your response to counsel's statement that he was basing that on some incorrect assumptions or information? Counsel is correct that the inquiry with respect to lack of probable cause for an arrest and whether a statement is voluntary or coerced, that is a distinct inquiry. However, it ignores the fact that during that hearing, petitioner provides a number of details about the circumstances pursuant to which he made his inculpatory statement admitting to the fact that he violently shook his five-month-old son Dylan. And it also ignores the fact that petitioner's testimony was challenged and his credibility was challenged in a number of respects during that hearing. He stated that police officers, the detectives in the case threatened to deport him, shoved him against a wall, threatened to put him in a cell with someone who would beat him up. Um, but he also later testified that, you know, he admitted when he told police officers that a minor car accident at Jewel caused his son injuries, that that was, that was misleading. Um, he denied being threatened or mistreated by the detectives when he spoke to an ASA. Um, Detective Landwehr, who also testified, um, denied that he was aware of petitioner's partner, um, pushed him against the wall. And, um, petitioner's testimony was also refuted in another respect by, um, the hospital social worker. Um, the social worker, uh, denied that she'd ever suggested that petitioner and his wife, um, or his girlfriend hire an attorney when they were escorted out of the hospital, even though petitioner had said that she had in fact, um, relayed that suggestion to him. So it was only after, um, the trial court denied the motion of during a hearing in which petitioner's credibility was challenged that the decision to withdraw the motion to suppress the statement was made. And as the court had pointed out, that decision was made after consultation with petitioner. Um, given the totality of the circumstances, um, counsel's decision to, um, withdraw the motion of the press was neither unreasonable, um, nor prejudicial because a lot of the evidence that motion to suppress the statement, um, would have been substantially the same and petitioner's credibility had already been challenged. Um, so in that respect, petitioner is unable to make, uh, satisfy his burden of, um, making a substantial showing of a constitutional violation. Um, with respect to, you know, challenging trial counsel's defense strategy, he's likely, um, unable to, um, show that counsel's strategic decisions at trial, um, were constitutionally deficient. Um, it's clear in the records. So he, he argues that, you know, his, his attorney should have attempted to blame Lou Penby for Dylan's injuries. Um, and that his attorney should have called an expert witness to testify that Dylan's injuries, um, you know, could have inflected several weeks earlier. Um, the record reflects that, you know, counsel did consider, um, the possibility of blaming Lou Penby for Dylan's injuries and that he ultimately abandoned that potential strategy once it became clear that petitioner's statement would in fact be introduced at trial. Um, his response to counsel's response to the ARDC complaint, um, clearly reflects and explains this change in trial strategy. And it's also important to note that the evidence on which petitioner relies to argue that, you know, counsel should have blamed Lou Penby, that evidence is not exculpatory. The doctor's report in June of 2009 essentially just shows that Dylan was likely the victim of systemic sustained child abuse. Um, although those injuries occurred when Lou Penby was the primary caregiver, um, there's no dispute that petitioner lived in the same residence, had access to a son. Um. Well, not only this, but he admitted on the stand that he, he performed the physical acts that culminated in the injuries to the son that resulted in death, correct? Exactly. Exactly. I mean, so, so yeah, um, that is an issue that, that he testified to voluntarily. I mean, we can't, that, that's there. Right. And so counsel made these decisions not to blame Lou Penby and not to, um, you know, present an expert witness knowing that petitioner's statement, videotaped statement was coming in and that petitioner was going to testify to the same facts, essentially at trial. Um, with respect to the DCFS reports, um, you know, petitioner suggested it shows a dishonesty on the part of Lou Penby, um, ignores the fact that those reports contain very damaging information to him, including the fact that, um, a relative would observe Dylan cry whenever petitioner picked him up, that Lou Penby felt the need to rush home after work because she knew petitioner was frustrated at being out of work and being Dylan's primary caregiver. Um, so given the evidence that, you know, to start confess to, um, abusing his son, um, given the fact of the, um, the medical testimony, the fact that he was Dylan's primary caregiver at the time, counsel's decision not to try to assign blame to, um, another party was not unreasonable or prejudicial. Um, with respect to the whole expert witness, um, allegation, um, the record reflects again, the response to the DCFS expert considered calling the expert to dispute, um, the timing of the injuries. However, in light of the fact that the chosen defense strategy was not going to be a complete mental state to sustain a conviction for first degree murder, um, Dr. Opphoven would not have been able to offer any relevant testimony with respect to that issue. Um, and it was simply not relevant to support counsel's chosen defense. Um, in addition, it's also important to note, based on her affidavit, that, um, Dr. Opphoven would not have been able to exclude, um, child abuse as the cause of Dylan's death. Now there's a bunch of issues with respect to, um, you know, shaken baby syndrome. Um, and a lot of that appears to be, you know, a matter of semantics, um, but her opinion that perhaps Dylan's injuries could have been inflicted weeks earlier. Um, it's important to note that petitioner became, um, Dylan's primary caregiver, I think in mid-June. So he was still Dylan's primary caregiver, you know, even two or three weeks earlier. Um, and had Dr. Opphoven testified, what essentially we would have had was a battle of the experts. So we've had states, medical witnesses saying that Dylan's injuries were acute, inflicted hours, um, or maybe a day or two prior to his admission to the hospital on September 3rd. And then Dr. Opphoven would have said it occurred earlier. Um, and in light of all the evidence presented at trial, um, including petitioner's confession, um, and his own trial testimony, he's unable to show that he incurred any prejudice due to, um, counsel's informed decisions with respect to what relevant defense for that. Um, with respect to sentencing issues, um, direct reflects that, um, the court, what the trial court clearly was aware of, um, mitigating evidence. In fact, this court, um, direct appeal affirmed, um, petitioner's sentence and said that it was apparent from the fact that he received a sentence at the lower sentencing range, um, 35 years that the court did consider mitigating evidence, um, petitioner's father based on his affidavit would have simply testified that his son was a good boy. Um, he had good manners. He was involved in the community, uh, lack of criminal history. And the record reflects that the court was aware that defendant had never, um, been in significant legal trouble. Um, and although the petitioner relies on one statement, um, where the court says he didn't know much about petitioner, um, they're ignoring the totality of what the court said in fashioning petitioner's sentence, where the court acknowledged that petitioner appeared to be a decent man, aside from causing his five month old child's death. Um, so the court clearly considered, um, mitigating evidence and petitioners unable to show that, um, his sentence would have been different, different had, um, his father been called to testify at the sentencing hearing. Unless this court, go ahead. No, go ahead. Yes. Unless this court has any additional questions, um, the people respectfully request, um, this court to affirm the trial court second stage dismissal of petitioner's post conviction petition. Okay. Um, is there a brief rebuttal? So, um, counsel argues, um, that there's no merit to the motion to suppress argument because, um, uh, essentially the judge heard, um, some of the evidence surrounding this, the, the circumstances of Mr. Kibayashi statement to police at the motion to quash. However, um, the judge explicitly didn't rule or on or consider any of that evidence in finding that there was probable cause to arrest, um, Mr. Kibayashi. Um, in addition to Mr. Kibayashi testimony about, um, you know, the circumstances surrounding his statements, um, council also presented at the motion to quash cell phone records that reveal that Mr. Kibayashi missed over 20 calls while he was in police custody, which corroborate, um, much of what he testified to at the hearing. You're spending a considerable amount of time on this motion to suppress issue. I'm just curious, do you consider that to be your strongest argument? Um, I, I wouldn't say that it's the strongest argument. I think, as I mentioned before, I think overall, um, the cumulative effect of all of these decisions, there's, it's a cascading effect because, um, council makes a flawed assumption about the motion to suppress and concedes that Mr. Kibayashi statement is going to come in. And so then he shifts his trial strategy as a result of that flawed decision. And so I think that can be the catalyst for a lot of this flawed decision-making, but I don't necessarily believe that it's, um, that, that all of these arguments rise or fall with this one specific issue about the motion to suppress, um, with regards to Mr. Kibayashi's trial testimony. Um, of course it's, it was Mr. Kibayashi as it, as any criminal defendant's ultimate right to choose whether to testify. However, um, just as with the decision surrounding, uh, withdrawing the motion to suppress, any decision about whether to testify is informed, of course, by the advice of council. And if council is making assumptions about whether the statement is going to come in based on a flawed legal assumption, um, then it, it's hard to say at this stage, whether Mr. Kibayashi would have chosen, um, to testify. Um, in addition... Is there any case law that you're relying on for that that, that that would be enough in this case, under these circumstances for, uh, to show prejudice? Uh, so we're not relying on a specific case, but even if... Well, but again, there are lots of cases on this issue and, uh, it, it, it appears, you know, the cases talk about strategy and judgment of the council. And, and, and as you concede, I mean, there was discussion with his client and it's a client's decision, right? So, uh, the fact that there's no case law on any of this that, uh, that shows that, uh, this might be inappropriate, uh, you're, as I hear you, you're saying your best argument is that if you, that one plus one plus one plus one equals the reversal. But in, in and of themselves, even though, you know, they don't seem on the, on their own right to have enough force under the law. I'm not saying, I'm not saying you're saying that, but that's what it appears from your brief and from what you're saying, because you haven't really put in any, uh, case law that supports you. So at this stage, at this, this is a second stage dismissal. So ultimately what we're trying to articulate here is that there is a lot that's still up in the air about these series of decisions. And the reason why I'm talking about them holistically is because as I mentioned before, it's hard to separate them because each decision is made down the line as a result of the previous decision that had been made. And so what we're, what we're arguing is that, um, we need an evidentiary hearing to be able to flesh out counsel's decision-making. Um, you know, we could also obviously have counsel mentioned a battle of the experts, but at this stage, it's not, uh, it's not the, uh, evaluating the credibility of what Dr. Oppoven would have testified to as, as opposed to the state's experts is not really the purpose of, of the second stage, uh, consideration. And so an evidentiary hearing where you can have a client on the stand, where you can have trial counsel on the stand, where you can have the forensic experts on the stand to be able to flesh out what actually happened, what, what, um, led to the decisions in this case is what we're asking for. Um, when your, when, when your client was on the stand at trial, he admitted that he broke his, uh, son's ribs a few weeks before, and that he shook him violently, his eyes rolled in the back of his head and consequently he had a seizure. How are you going to overcome that? So your honor, uh, of course, Mr. Kibayasi testified that he shook his child. Um, but Mr. Kibayasi wasn't a medical expert who could testify about causation. Um, the state's experts also couldn't pinpoint a specific timeline for the injuries. And in Dr. Oppoven's affidavit, she talks about, um, the difficulty in pinpointing specific timelines for injuries. She talks about, um, the, uh, an occurrence of re-bleeding where a previous injury can be, um, exacerbated through any number of activities. And so there's still a lot of lingering questions about what specifically caused the injuries in this case. And counsel's performance was deficient for not challenging the state's theory of causation and his, his decisions for failing to do so was, uh, based on flawed legal assumptions. And just briefly, um, to, um, the state's argument about the, um, the argument pertaining to the content in hearing, um, the judge specifically stated that he didn't know Mr. Kibayasi's character in spite of the fact that he reviewed the PSI. Um, and Mr. Kibayasi who had no previous criminal record and had, you know, uh, educational background and a work history got a sentence nearly twice the min- the minimum. And so the judge clearly was longing for more information about Mr. Kibayasi's character. Um, and a trial counsel averred to the trial, uh, to the trial court that Mr. Kibayasi's father couldn't come because he was stationed in Afghanistan. And the father states in an affidavit that that wasn't true, that counsel had told him nothing was going to happen on that date. So that further lends support to counsel's deficient performance and overall confusion surrounding this case. Um, and so, uh, while, uh, we, we aren't arguing that we have to win all four remands, we are simply saying that all of these four independent issues, um, have a cascading effect of ineffectiveness. And so for those reasons, we're asking for a remand for an evidentiary hearing. Okay. Um, thank you both for your briefs and your argument. We will take the matter under consideration and issue a decision forthwith.